IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 17, 2010

Lyle W. Cayce
Clerk

Nos. 05-70028 and 09-70018

FELIX ROCHA,

Petitioner – Appellant

v.

RICK THALER, Director, Texas Department of Criminal Justice,
Correctional Institutions Division,

Respondent – Appellee

Appeals from the United States District Court
for the Southern District of Texas

ON PETITION FOR REHEARING
(Opinion September 9, 2010, 5th Cir. 2010 _____F.3d_____)

Before JOLLY, HIGGINBOTHAM, and HAYNES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

We treat Petitioner-Appellant Felix Rocha's petition for rehearing en banc as a petition for panel rehearing pursuant to Fifth Circuit Internal Operating Procedures under Federal Rule of Appellate Procedure 35. We deny Rocha's petition for rehearing for the same reasons we held he is not entitled to have a federal court review the merits of his federal constitutional claim for habeas relief, reasons which this opinion clarifies and elaborates.

The Texas Court of Criminal Appeals ("the CCA") determined that Rocha's state habeas application could not satisfy the requirements of Texas Code of Criminal Procedure art. 11.071 § 5(a)(3) and dismissed it as an abuse of the writ under art. 11.071 § 5(c). Rocha's petition for rehearing contends that we erred by holding that the CCA's dismissal of his state habeas application rested on an independent and adequate state-law ground. As we explain in Part I, Rocha's contention is without merit. It is true that § 5(a)(3) incorporates a federal standard—specifically, the actual-innocence-of-the-death-penalty standard articulated by Sawyer v. Whitley.[1] However, a claim of actual innocence of the death penalty under Sawyer is not itself a claim for relief under the Antiterrorism and Effective Death Penalty Act ("AEDPA").[2] It is a gateway claim that, if successful, authorizes a federal court to review the merits of a habeas claim that would otherwise be procedurally barred. With only a few possible exceptions,[3] a gateway claim of actual innocence of the death penalty and a federal constitutional claim for habeas relief are not equivalent. Section 5(a)(3) allows the CCA to decide the former without reaching the merits of the latter. A determination by the CCA that a successive habeas application does not satisfy the requirements of § 5(a)(3) does not empower us to reach the merits of the underlying claim. All it empowers us to do is make a de novo

[1] 505 U.S. 333 (1992).

[2] See generally 28 U.S.C.A. § 2254 (West 2006).

[3] An actual-innocence claim is not a claim of constitutional error. It is a procedural device that authorizes the adjudication of a federal constitutional claim that would otherwise be procedurally defaulted. However, the federal constitutional claim of a habeas petitioner who argues that the Constitution renders him ineligible for the death penalty is, in substance, a claim that the petitioner is actually innocent of the death penalty. In cases presenting such claims, the gateway issue and the underlying constitutional issue largely merge into a single inquiry. See infra notes 46-51 and accompanying text.

determination of whether the petitioner is actually innocent of the death penalty—the same determination we make whenever we are asked to excuse a procedural default.

Rocha contends that our decision cannot be reconciled with this Court's prior decisions in Rivera v. Quarterman,[4] Ruiz v. Quarterman,[5] and Balentine v. Thaler.[6] The state responds that Hughes v. Quarterman[7] is evidence of the correctness of our approach. Neither argument is fully sound. The cases the parties rely on construe Texas Code of Criminal Procedure article 11.071 § 5(a)(1). The CCA dismissed Rocha's state habeas application because his application did not satisfy § 5(a)(3). As we explain in Part II, our precedent interpreting § 5(a)(1) does not compel us to conclude that the CCA did not employ an independent state-law ground of decision when it determined that Rocha could not satisfy § 5(a)(3). When the CCA determines that a successive state habeas application does not satisfy § 5(a)(1) and dismisses it as an abuse of the writ, it sometimes does so because it has concluded that the federal constitutional claim on which the application seeks relief is meritless. We have previously held that in such cases the CCA's decision is interwoven with the merits of the federal constitutional claim and thus does not rest on an independent state-law ground. By contrast, when the CCA determines that a successive state habeas application does not satisfy § 5(a)(3), it does so because it has concluded that the habeas applicant cannot establish that he is actually

---

[4] 505 F.3d 349 (5th Cir. 2007), cert. denied, 129 S. Ct. 176 (2008).

[5] 504 F.3d 523 (5th Cir. 2007).

[6] 609 F.3d 729 (5th Cir. 2010), vacated on rehearing, No. 09-70026 (5th Cir. Nov. 17, 2010).

[7] 530 F.3d 336 (5th Cir. 2008), cert. denied, 129 S. Ct. 2378 (2009).

3

innocent of the death penalty. To arrive at that conclusion, the CCA need not, and does not, consider the merits of the underlying federal constitutional claim.[8]

## I.

A full summary of the facts is provided in our opinion; only those most pertinent are included here. A jury convicted Rocha of capital murder, and on the jury's answers to the special issues the trial court sentenced him to death. Rocha filed multiple unsuccessful habeas applications in the Texas state courts. He then filed a federal habeas petition, which the district court denied and dismissed. Rocha then filed a final habeas application with the CCA, the first of his state habeas applications in which he raised for the first time the ineffective-assistance-of-counsel-at-sentencing claim[9] that he presses here. The Texas Court of Criminal Appeals found that the allegations of Rocha's final state habeas application "do not satisfy the requirements of Article 11.071, section 5(a)(3)" and therefore dismissed his application "as an abuse of the writ."[10] After the CCA dismissed his successive application, Rocha returned to the district court and filed a motion for relief from judgment under Rule 60(b) of the Federal Rules of Civil Procedure. In it, he contended that the CCA's order decided his Wiggins claim on the merits, thereby opening it up for plenary review by a federal court. The district court disagreed and found the claim was procedurally defaulted. We affirmed.

---

[8] Again, subject to the possible exception of cases in which the applicant's federal constitutional claim is itself a claim that the applicant is ineligible to receive, and therefore actually innocent of, the death penalty. See infra notes 46-51 and accompanying text.

[9] See generally Wiggins v. Smith, 539 U.S. 510 (2003).

[10] Ex parte Rocha, No. WR-52,515-04, 2008 WL 5245553, at *1 (Tex. Crim. App. Dec. 17, 2008) (unpublished).

A.

A federal court generally cannot review the merits of a state prisoner's habeas petition if the claims in the petition are procedurally defaulted.[11] A habeas claim can be procedurally defaulted in either of two ways.[12] First, if the prisoner has never fairly presented that claim to the highest available state court, the claim is unexhausted.[13] The parties agree that Rocha exhausted his Wiggins claim by presenting it to the CCA in a state habeas application. Second, if the prisoner has presented the claim to the highest available state court but that court has dismissed the claim on a state-law procedural ground instead of deciding it on the merits, the claim has been decided on an independent and adequate state-law ground.[14] The parties vigorously dispute whether the CCA's dismissal of Rocha's Wiggins claim as an abuse of the writ rested on an independent and adequate state law-ground.

"If a state court clearly and expressly bases its dismissal of a prisoner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for dismissal, the prisoner has procedurally

---

[11] See, e.g., Magwood v. Patterson, 130 S. Ct. 2788, 2801 (2010) ("If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention—whether in trial, appellate, or habeas proceedings, as state law may require—procedural default will bar federal review."). This rule is subject to two exceptions, which are discussed infra at notes 26-30 and in the accompanying text. In addition, AEDPA allows a federal court to deny a habeas petition on its merits even if the claims it contains are unexhausted. See 28 U.S.C. § 2254(b)(2).

[12] Coleman v. Dretke, 395 F.3d 216, 220 (5th Cir. 2004), cert. denied, 546 U.S. 938 (2005). See generally O'Sullivan v. Boerckel, 526 U.S. 838, 850-56 (1999) (Stevens, J., dissenting) (explaining the differences between the two varieties of procedural default).

[13] See, e.g., Kittelson v. Dretke, 426 F.3d 306, 315-16 (5th Cir. 2005)

[14] See, e.g., Harris v. Reed, 489 U.S. 255, 262 (1989).

5

defaulted his federal habeas claim."[15]   The state procedural rule must be "both independent of the merits of the federal claim and an adequate basis for the court's decision."[16]  A state procedural rule is an adequate basis for the court's decision only if it is "strictly or regularly applied evenhandedly to the vast majority of similar claims."[17]  The parties agree that a state habeas application that is dismissed because it does not satisfy § 5(a)(3) has been dismissed on an adequate state-law ground.  A state procedural rule operates independently of the merits of the federal claim when a federal court could reverse the state court's disposition of any federal-law issues presented by the petition and, because of the state court's resolution of the state-law issues, the outcome of the case would not change.[18]  Rocha's petition for rehearing argues that the CCA's determination that Rocha's state habeas application did not satisfy § 5(a)(3) did not operate independently of the merits of his Wiggins claim.

Before turning to our discussion of § 5(a)(3), we pause for a precise explanation of how Texas's abuse-of-the-writ statute operates.  Texas Code of

---

[15] Nobles v Johnson, 127 F.3d 409, 420 (5th Cir. 1997), cert. denied, 523 U.S. 1139 (1998).

[16] Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001).

[17] Amos v. Scott, 61 F.3d 333, 339 (5th Cir.) (emphasis omitted), cert. denied, 516 U.S. 1005 (1995).

[18] See CHARLES ALAN WRIGHT ET AL., 16B FED. PRAC. & PROC. JURIS. § 4019 (2d ed. Westlaw current through the 2010 update) ("Review is . . . precluded if state substantive law is sufficient to support the judgment no matter how the federal question is resolved . . . .").  For example, the Supreme Court would lack jurisdiction to review a state-high-court decision invalidating a state statute on both state and federal constitutional grounds.  Even if the Court reversed the federal constitutional decision, the statute would remain invalid under the state constitution.  See RICHARD H. FALLON, JR. ET AL., HART & WESCHLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 463-64 (6th ed. 2009).  Similarly, a federal court sitting in habeas will decline to decide a federal constitutional claim that the state court rejected on procedural grounds because even if the federal claim is meritorious, the federal court will decline to grant relief on it out of deference to the state court's procedural ruling.

Criminal Procedure art. 11.071 § 5(c) requires a successive state habeas application to be dismissed as an abuse of the writ unless it can satisfy the requirements of one of the three subsections of art. 11.071 § 5(a). The rule codified in §5(c)—that a Texas habeas applicant must bring all of his claims in his first application—is grounded in state law and is procedural in nature. Standing alone, § 5(c) inarguably would be an independent state-law ground for decision.[19] But § 5(c) does not stand alone. Its applicability is conditioned on a finding that none of the three subsections of § 5(a) has been satisfied. Our core inquiry thus reduces to this: Does a finding that § 5(a)(3) has not been satisfied transform a dismissal under § 5(c) from one that rests on state law to one that rests on federal law?

Section 5(a)(3) provides that when a Texas prisoner files a successive habeas application after having previously filed an initial application,

> a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that: . . . (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071, 37.0711, or 37.072.[20]

---

[19] See, e.g., Murch v. Mottram, 409 U.S. 41, 45-46 (1972) (per curiam) ("In Sanders v. United States, 373 U.S. 1, 18 (1963), this Court said, in speaking of habeas corpus for federal prisoners: 'Thus, for example, if a prisoner deliberately withholds one of two grounds for federal collateral relief at the time of filing his first application . . . , he may be deemed to have waived his right to a hearing on a second application presenting the withheld ground.' . . . There can be no doubt that States may likewise provide . . . that a prisoner seeking post-conviction relief must assert all known constitutional claims in a single proceeding."); see also Fearance v. Scott, 56 F.3d 633, 642 (5th Cir.) (explaining that Texas's rule requiring a habeas applicant to present all of his claims in his initial habeas application is state procedural requirement that functions as an independent and adequate state-law ground), cert. denied, 515 U.S. 1153 (1995).

[20] TEX. CODE CRIM. PROC. ANN. art. 11.071 § 5(a)(3) (Vernon's 2005).

7

We are obliged to construe and apply § 5(a)(3) as the CCA construes and applies it.[21] Therefore we begin our analysis with a discussion of Ex parte Blue,[22] the CCA's seminal interpretation of the statute.

In Blue, the CCA held that § 5(a)(3) necessitates "a threshold showing of evidence that would be at least sufficient to support an ultimate conclusion, by clear and convincing evidence, that no rational factfinder would fail to find" that the applicant is ineligible for the death penalty."[23] In other words, the CCA makes a threshold determination of whether the facts and evidence contained in the successive habeas application, if true, would make a clear and convincing showing that the applicant is actually innocent of the death penalty.[24] The CCA concluded that performing this kind of threshold review was consistent with the fact that, in enacting § 5(a)(3), the Texas "Legislature apparently intended to codify, more or less, the doctrine found in Sawyer v. Whitley."[25]

Sawyer embodies a federal standard. Under the federal common law of procedural default, the general rule that a federal court cannot review the merits of a state prisoner's habeas claim if the claim is procedurally defaulted is subject

---

[21] See, e.g., Price v. City of San Antonio, 431 F.3d 890, 892 (5th Cir. 2005); F.D.I.C. v. Abraham, 137 F.3d 264, 267-28 (5th Cir. 1998). "As we have stated, '[i]t is not our function as a federal appellate court in a habeas proceeding to review a state's interpretation of its own law', and 'we defer to the state courts' interpretation' of its statute." Arnold v. Cockrell, 306 F.3d 277, 279 (5th Cir. 2002) (quoting Weeks v. Scott, 55 F.3d 1059, 1053 (5th Cir. 1995)).

[22] 230 S.W.3d 151 (Tex. Crim. App. 2007)

[23] Id. at 163 (emphasis omitted).

[24] Id.

[25] Id. at 160; see also id. ("Section 5(a)(3) of Article 11.071 represents the Legislature's attempt to codify something very much like this federal doctrine of 'actual innocence of the death penalty' for purposes of subsequent state writs.").

8

to two exceptions.[26] First, a federal court can undertake merits review if the prisoner can show cause for and prejudice from the procedural default.[27] Rocha does not contend that he can make a showing of cause and prejudice. Second, a federal court can review the merits of the claim if the prisoner can show that failure to do so would result in a fundamental miscarriage of justice.[28] The prisoner can satisfy the fundamental-miscarriage-of-justice exception in either of two ways. First, he can show by a preponderance of the evidence that he is actually innocent of the crime of which he has been convicted.[29] Alternatively, Sawyer allows him to show by clear and convincing evidence that he is "actually innocent of the death penalty."[30] The Texas legislature incorporated into § 5(a)(3) both Sawyer's definition of "actual innocence of the death penalty"[31] and Sawyer's clear-and-convincing standard of proof for such a claim.[32]

The precise meaning of the phrase "actually innocent of the death penalty," as defined by the Supreme Court in Sawyer, is important to our disposition of Rocha's petition. Acknowledging that the concept of "actual innocence 'does not translate easily into the context of an alleged error at the

---

[26] See, e.g., Dretke v. Haley, 541 U.S. 386, 388 (2004).

[27] Wainwright v. Sykes, 433 U.S. 72, 87 (1977).

[28] Murray v. Carrier, 477 U.S. 478, 495-96 (1986).

[29] See Schlup v. Delo, 513 U.S. 298, 327 (1995) ("To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."); In re Briscoe Enterprises, Ltd., II, 994 F.2d 1160, 1164 (5th Cir. 1993) ("'Preponderance' means that it is more likely than not.").

[30] 505 U.S. at 350.

[31] See Ex parte Blue, 230 S.W.3d at 159 ("'The Legislature quite obviously intended [§ 5(a)(3)], at least in some measure, to mimic the federal doctrine of 'fundamental miscarriage of justice.'").

[32] See TEX. CODE CRIM. PROC. art. 11.071 § 5(a)(3).

sentencing phase of a trial on a capital offense,'"[33] the Supreme Court held in Sawyer that a prisoner is actually innocent of the death penalty only if he can "show by clear and convincing evidence that but for constitutional error at his sentencing hearing, no reasonable juror would have found him eligible for the death penalty under [state] law."[34]   Sawyer thus "'expressly rejected the argument that a constitutional error that impacts only the jury's discretion whether to impose a death sentence upon a defendant who is unquestionably eligible for it under state law can be considered sufficiently fundamental as to excuse the failure to raise it timely in prior state and federal proceedings.'"[35]

## B.

Rocha argues that when the CCA concluded that his successive state habeas application did not satisfy the requirements of § 5(a)(3), it necessarily also concluded that his Wiggins claim is without merit.  Rocha effectively invites us to treat an actual-innocence claim under Sawyer as synonymous with an ineffective-assistance claim under Wiggins.  Our panel opinion declined his invitation, and we decline it again here.  The CCA did not have to reach the merits of Rocha's Wiggins claim to conclude that he is not actually innocent of the death penalty.[36]  A state court does not undermine the independent state-law

---

[33] Sawyer, 505 U.S. at 340 (quoting Smith v. Murray, 477 U.S. 527, 537 (1986)).

[34] Id. at 350.

[35] Haynes v. Quarterman, 526 F.3d 189, 197 (5th Cir. 2008) (granting a certificate of appealability) (quoting Ex parte Blue, 230 S.W.3d at 160), habeas relief conditionally granted by 561 F.3d 535 (5th Cir. 2009), conditional grant of habeas relief reversed sub nom. Thaler v. Haynes, 130 S.Ct. 1171 (2010).

[36] Accord Williams v. Thaler, 602 F.3d 291, 305-07 (5th Cir. 2010) (concluding that an unexhausted successive habeas petition the merits of which the CCA would refuse to consider on the ground that it did not satisfy the requirements of § 5(a)(3) was procedurally defaulted

character of its procedural-default doctrine by using a federal standard to determine whether an otherwise defaulted successive habeas application should be permitted to bypass a procedural bar.

A claim of actual innocence is "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'"[37]  This statement is no mere shibboleth.  It teaches that consideration of a petitioner's gateway claim of innocence precedes consideration of his federal constitutional claim not just temporally but analytically.  Only if the petitioner can show that he is actually innocent of the death penalty can a federal court proceed to consider the merits of the alleged underlying constitutional violation.  If a petitioner cannot establish his actual innocence, a federal court cannot, and does not, consider the merits of his habeas claim.

The eleven federal courts of appeals that regularly entertain habeas petitions under 28 U.S.C. § 2254 have unanimously held that a federal court's determination that a petitioner cannot prove his actual innocence does not constitute a decision on the merits of the petitioner's constitutional claim for habeas relief.[38]  Quite the contrary: such a determination precludes a federal

---

and precluded from merits review in federal court), cert. denied, __S. Ct.__, 2010 WL 2917636 (Nov. 1, 2010); Nobles, 127 F.3d at 422 (same); see also Busby v. Dretke, 359 F.3d 708, 724 (5th Cir.) (treating a petition that could not satisfy any of the three subsections of § 5(a) as procedurally barred), cert. denied, 541 U.S. 1087 (2004).

[37] Schlup, 513 U.S. at 315 (quoting Herrera v. Collins, 506 U.S. 390, 404 (1993)).

[38] See, e.g., Simpson v. Matesanz, 175 F.3d 200, 215 (1st Cir. 1999) ("Because there is neither 'cause' nor 'actual innocence,' . . . the federal court sitting in habeas is precluded from hearing the merits of Simpson's challenge."), cert. denied, 528 U.S. 1082 (2000); Jones v. Keane, 329 F.3d 290, (2d Cir.) ("In the case of procedural default, we may reach the merits of the claim only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent. Since Jones has not attempted to meet this standard, we do not reach the merits of his claim." (internal citation and quotation marks omitted)), cert. denied, 540 U.S.

11

court from even considering the merits of the habeas claim. Rocha does not argue that this rule is or should be different when it is a state court instead of a federal court that determines that a habeas petitioner cannot prove his actual innocence. Rather, he flatly asserts that a decision on actual innocence constitutes a decision on the merits. That assertion blinks the distinction between a innocence claim that functions as a gateway into AEDPA and a constitutional claim that functions as a ground for habeas relief under AEDPA.

---

1046 (2003); Tice v. Wilson, 276 F. App'x 125, 126 (3d Cir.) ("[The petitioner] failed to establish his actual innocence for purposes of the fundamental miscarriage of justice standard, and we cannot overlook his procedural default and reach the merits of his ineffective assistance of justice claim."), cert. denied, 129 S. Ct. 402 (2008); Watkins v. Murray, 998 F.2d 1011, 1993 WL 243692, at *5 (4th Cir. 1993) (per curiam) (unpublished table decision) ("Because Watkins has demonstrated neither cause and prejudice nor actual innocence, we cannot reach the merits of his defaulted Edwards claim."), cert. denied, 510 U.S. 1056 (1994); Montoya v. Collins, 988 F.2d 11, 13 (5th Cir.) ("Montoya . . . has not even alleged, much less demonstrated, that a 'miscarriage of justice' regarding actual innocence or 'actual innocence of the death penalty' could be established in his case. This petition . . . may not be considered on its merits."), cert. denied, 507 U.S. 1002 (1993); Harris v. Lindamood, 355 F. App'x 940, 943 (6th Cir. 2009) ("Because Harris has failed to demonstrate her actual innocence for first degree felony murder, her procedurally barred ineffective assistance of counsel claim cannot be considered on the merits."); Balsewicz v. Kingston, 425 F.3d 1029, 1035 (7th Cir. 2005) ("Because Balsewicz cannot demonstrate the actual innocence necessary to pass through this "gateway," we will not reach the merits of his ineffective assistance of counsel claims."), cert. denied, 546 U.S. 1144 (2006); McCoy v. Norris, 125 F.3d 1186, 1192 (8th Cir. 1997) ("McCoy cannot make his way through the actual innocence gateway, so we will not consider his constitutional claims on the merits."), cert. denied, 523 U.S. 1008 (1998); Smith v. Baldwin, 510 F.3d 1127, 1139 (9th Cir. 2007) (en banc) ("Because we conclude that Smith has demonstrated neither actual innocence nor cause and prejudice, we cannot consider the merits of Smith's procedurally defaulted federal habeas petition."), cert. denied sub nom. Smith v. Mills, 129 S. Ct. 37 (2008); Richardson v. Dept. of Corrections, 198 F.3d 258, 1999 WL 820221, at *4 (10th Cir. Oct. 14, 1999) (unpublished table decision) ("Richardson does not supplement his claim with any allegation of actual innocence. Therefore, the district court properly held that federal review of the issues in his habeas petition was procedurally barred, and Richardson's claims cannot be considered on the merits."); Dowling v. Sec'y for Dept. of Corrections, 275 F App'x 846, 848 (11th Cir. 2008) ("Dowling claims that he is actually innocent of the offense with which he has been convicted. However, Dowling offered no new evidence of actual innocence. . . . As Dowling has not overcome the procedural default of his claim, we do not reach the merits of his claim.").

12

The Supreme Court's decision in House v. Bell[39] illustrates the lack of overlap between a gateway claim of actual innocence and an underlying constitutional claim for habeas relief. The Court concluded in House that the petitioner had made a sufficient gateway showing of actual innocence to justify having his federal habeas claim considered on the merits.[40] But the Court did not grant habeas relief. Instead, it remanded the petition to the district court,[41] which subsequently considered the merits of House's claim.[42] If Rocha were correct that a decision on the gateway innocence claim is tantamount to a decision on the underlying constitutional claim, there would have been no need for the Court to remand House's petition for further proceedings below.

The distinction between a gateway innocence claim and an underlying constitutional claim is perhaps nowhere more clear than in the context of a Wiggins claim of ineffective assistance of counsel at sentencing. When we consider a properly presented Wiggins claim, we determine whether the petitioner was prejudiced by counsel's deficient performance by reweighing "'the evidence in aggravation against the totality of the available mitigating evidence'" and asking whether the petitioner "has shown that, had counsel presented all the available mitigating evidence, there is a reasonable probability that a juror would have found that the mitigating evidence outweighed the aggravating

---

[39] 547 U.S. 518 (2006).

[40] Id. at 522 & 553-54. House contended that he was actually innocent of the crime for which he had been convicted, not that he was actually innocent of the death penalty, but the procedural steps are the same for both types of claims.

[41] Id. at 555

[42] See House v. Bell, No. 3:96-cv-883, 2007 WL 4568444, at *1 (E.D. Ten. Dec. 20, 2007) (unpublished) (conditionally granting habeas relief).

13

evidence."[43]  The contrast between that analysis and our analysis of an actual-innocence-of-the-death-penalty claim is stark.  The quality of the mitigation evidence the petitioner would have introduced at sentencing has no bearing on his claim of actual innocence of the death penalty.  Evidence that might have persuaded the jury to decline to impose the death penalty is irrelevant under Sawyer.  The only question is whether the petitioner was eligible for the death penalty.  The distinction between these two inquiries further underscores the basic point that the CCA did not decide the merits of Rocha's Wiggins claim when it concluded that Rocha is not actually innocent of the death penalty.[44]

There may well be some exceptions to the rule that a decision on the gateway innocence claim does not constitute a decision on the underlying constitutional claim.  As Judge Dennis has previously recognized, an Atkins

---

[43] Gray v. Epps, 616 F.3d 436, 442 (5th Cir. 2010) (quoting Wiggins, 539 U.S. at 534).

[44] Our view that the actual-innocence-of-the-death-penalty review that the CCA conducts under § 5(a)(3) does not undermine the independent, state-law character of the Texas's abuse-of-the-writ statute is in accord with the views of seven of our sister circuits. See Rocha v. Thaler, 619 F.3d 387, 403 nn.52-58 (5th Cir. 2010) (slip op. at 21 nn.52-58) (compiling cases). Many state high courts review otherwise procedurally defaulted habeas claims for plain error, fundamental error, a fundamental miscarriage of justice, or manifest injustice.  Id. Those standards of review are largely one and the same, and they entail a level of review that is substantially similar to actual-innocence review.  See Thirty-Ninth Annual Review of Criminal Procedure: Appeals, 39 GEO. L.J. ANN. REV. CRIM. PROC. 856, 887 n.2630 (2010) (collecting cases from the federal courts of appeals using the terms "plain error," "miscarriage of justice," and "actually innocent" to define one another).
This kind of review does not constitute a decision on the merits of the underlying constitutional claim.  A state high court can conclude that there was no plain error or miscarriage of justice without concluding that the underlying claim for habeas relief is without merit.  Such review "may require a glance at the merits," but "it does not open up the merits to plenary consideration by the federal court."  See Neal v. Gramley, 99 F.3d 841, 844 (7th Cir. 1996) (Posner, C.J.), cert. denied, 522 U.S. 834 (1997).  Plain-error-style review allows state high courts to avoid deciding the merits of a habeas claim by concluding that, even if meritorious, the claim does not establish an error so fundamental that it seriously affects the fairness and integrity of the judicial proceedings in which the defendant was convicted.  Actual-innocence review under § 5(a)(3) allows the CCA to do the same.

claim[45] is a claim that the petitioner is ineligible for the death penalty.[46] So too is a claim that the petitioner was under eighteen at the time of his crime,[47] is insane,[48] or has some other characteristic that the Supreme Court has held categorically justifies exemption from the death penalty.[49] In such cases, the inquiry into the gateway innocence claim will substantially overlap with the inquiry into the merits of the underlying constitutional claim.[50] Our panel opinion's holding does not implicate this limited class of cases, as Rocha's Wiggins claim is not a claim of categorical ineligibility for the death penalty.

Finally, it follows that this Court reviews de novo the CCA's determination that Rocha cannot establish that he is actually innocent of the death penalty.

---

[45] See Atkins v. Virginia, 536 U.S. 304, 321 (2002) (holding that the Eighth Amendment prohibits the execution of the mentally retarded).

[46] See Moore v. Quarterman, 491 F.3d 213, 230 (5th Cir. 2007) (Dennis, J., dissenting) ("[A] petitioner can invoke the 'miscarriage of justice' exception if, but for the failure to exhaust, the petitioner would have not been eligible for the death penalty because some constitutional or state statutory prerequisite for the imposition of a death sentence could not have been satisfied. Moore easily satisfies this exception because . . . the district court properly found that Moore is mentally retarded." (internal citations and quotation marks omitted)), rev'd en banc, 533 F.3d 338 (5th Cir. 2008).

[47] See Roper v. Simmons, 543 U.S. 551 (2005).

[48] See Ford v. Wainwright, 477 U.S. 399 (1986).

[49] See generally Nelson v. Quuarterman, 472 F.3d 287, 318-19 (5th Cir. 2006) (en banc) (Dennis, J., concurring in the judgment) (cataloguing the various categorical exemptions from death-penalty eligibility recognized by the Supreme Court), cert. denied, 551 U.S. 1141 (2007).

[50] This is not to say that the two inquires become entirely identical. Compare Ex parte Blue, 230 S.W.3d at 163 (explaining that because the standard of proof under § 5(a)(3) is clear-and-convincing evidence, "[a] threshold showing that would allow the finder of fact to conclude no more than that the evidence preponderates in favor of a finding of mental retardation will obviously not suffice" on a successive application), with Ex parte Briseño, 135 S.W.3d 1, 12 (Tex. Crim. App. 2004) (adopting a preponderance-of-the-evidence standard of proof for Atkins claims raised in an original state habeas application).

A gateway claim of actual innocence is not a basis for relief under AEDPA.[51] Such a claim stands outside of AEDPA and offers to open a door into the statute that the petitioner's lack of diligence otherwise would have closed. Gateway claims of innocence are part of the federal common law of procedural default. De novo review is the norm in this area.[52] Just as we make de novo determinations of whether a state-law ground of decision is independent of federal law or adequate to support the judgment,[53] so too do we decide afresh whether a federal habeas petitioner is actually innocent of the death penalty.

C.

Rocha raises three challenges to our conclusion that the CCA's dismissal of his state habeas application rested on an independent and adequate state-law ground. First, he contends our conclusion is in conflict with the rule announced in Ake v. Oklahoma.[54] In Ake, the defendant's sanity was likely to be in issue at his trial. The defendant argued that the Constitution required the state to grant

[51] See, e.g., Wilkerson v. Cain, 233 F.3d 886, 893 (5th Cir. 2000) (Garza, J., specially concurring) ("The claim of actual innocence does not itself provide a basis for relief."). Nothing we say today pertains to a freestanding, Herrra-style claim of actual innocence that is not tethered to a claim of constitutional error at trial.

[52] See, e.g., Sigala v. Quarterman, 338 F. App'x 388, 393 (5th Cir. 2009) (per curiam) ("Because procedural default does not constitute an 'adjudication on the merits' for AEDPA purposes, the state court's finding of procedural default itself is reviewed de novo . . . ." (citing Valdez v. Cockrell, 274 F.3d 941, 946-47 (5th Cir. 2001))), cert. denied sub nom. Sigala v. Thaler, 130 S. Ct. 1506 (2010).

[53] See, e.g., Wright v. Quarterman, 470 F.3d 581, 586 (5th Cir. 2006), cert. denied, 551 U.S. 1134 (2007).

[54] 470 U.S. 68 (1985). Although the Supreme Court has declined to decide that Ake applies in the habeas context, see Coleman, 501 U.S. at 741, we have held that it does, see Rivera, 505 F.3d at 359. See also Stewart v. Smith, 536 U.S. 856, 860 (2002) (per curiam) (assuming without deciding that the rule announced in Ake, a direct-review case, also applies in habeas cases).

16

him access to a psychiatrist to assist him in preparing his defense. The Oklahoma state courts held that he had waived this argument.[55] However, Oklahoma's waiver rule did not apply to fundamental trial error, and under Oklahoma law any violation of a federal constitutional right was fundamental trial error.[56] As a result, the Supreme Court concluded that the Oklahoma courts' waiver ruling was not an independent and adequate state-law ground:

> [T]he State has made application of the procedural bar depend on an antecedent ruling on federal law, that is, on the determination of whether federal constitutional error has been committed. Before applying the waiver doctrine to a constitutional question, the state court must rule, either explicitly or implicitly, on the merits of the constitutional question. . . . [W]hen resolution of the state procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law.[57]

Ake stands for the proposition that when a state court's application of a procedural rule rests on an antecedent decision of an issue of federal law, a federal court can review or decide the same federal issue that the state court decided.

The difference between Ake and this case is that the federal-law issue the CCA decided when it applied § 5(a)(3) is not the same federal-law issue on which Rocha seeks habeas relief. By applying the waiver rule to Ake, the Oklahoma courts concluded that the federal constitutional claim that was the basis of Ake's habeas petition was meritless. By dismissing Rocha's state habeas application as an abuse of the writ, the CCA formed no conclusion about Rocha's Wiggins claim. Rather, it determined that (1) Rocha's Wiggins claim should be dismissed

---

[55] Ake, 470 U.S. at 74.

[56] Id. at 74-75.

[57] Id. at 75.

17

on an independent and adequate state-law ground unless Rocha could satisfy Sawyer's actual-innocence-of-the-death-penalty standard; and (2) Rocha could not satisfy Sawyer. State law—specifically, § 5(c)— was the basis for the CCA's dismissal. Unlike the Oklahoma courts in Ake, the CCA applies §§ 5(c) & 5(a)(3) to all successive state habeas applications that cannot demonstrate actual innocence of the death penalty, regardless of the merits of the federal constitutional claims contained in those applications. Nothing in Ake suggests that a state court's resolution of a single issue of federal law allows a federal habeas court to decide any and all issues of federal law that the state court might have, but did not, reach.[58]

Second, Rocha contends that we are wrong to conclude that § 5(a)(3) adopts a definition of actual innocence of the death penalty that is coextensive with the definition announced in Sawyer. We disagree for two reasons. First, in Haynes v. Quarterman a panel of this Court held that § 5(a)(3) codifies Sawyer's requirement that the petitioner must present evidence that he is ineligible for the death penalty.[59] Haynes is a published opinion, so its holding binds us. But we would have reached the same conclusion even if we were writing on a clean slate. As we explained in our opinion,[60] in Ex parte Blue the CCA expressly declined to

---

[58] Cf. ROMUALDO P. ECLAVEA, ET AL., 4 AM. JUR. 2D APP. REV. § 46 (Westlaw current through July 2010) ("An adequate state ground may preclude Supreme Court review of some federal issues which the state court refused to reach on state procedural grounds, while not precluding review of other federal issues which the state supreme court did decide, finding that there was no procedural bar to deciding those issues." (citing Cramp v. Bd. of Pub. Instruction, 368 U.S. 278 (1961))).

[59] See 526 F.3d at 197 ("Haynes alleges that mitigating evidence could have influenced the jury's discretion but does not argue that evidence not presented due to alleged ineffective assistance of counsel would render him ineligible for the death penalty. Therefore, he has no meritorious argument that the Texas Court of Criminal Appeals would allow him to file a successive application for post-conviction relief . . . .").

[60] See Rocha, 619 F.3d at 406 (slip op. at 24-26).

18

hold that § 5(a)(3) is anything more than a codification of Sawyer.[61] We think it is beyond unlikely that the CCA announced a novel theory of § 5(a)(3) sub silentio in the course of dismissing Rocha's petition as an abuse of the writ.

Third, Rocha argues that our decision conflicts with this Court's previous decisions in Rivera, Ruiz, and Balentine. In effect, Rocha contends that prior decisions of both the CCA and this Court have robbed Texas's abuse-of-the-writ statute of its independent state-law character. We conclude otherwise. A full explanation of the reasons for our contrary conclusion requires us to trace the history of Texas's abuse-of-the-writ doctrine in some detail. We turn to that history now.

## II.

## A.

We have long acknowledged that a state's abuse-of-the-write doctrine can sometimes qualify as an independent and adequate state-law ground that functions as a procedural bar to federal-court merits review of habeas claims.[62] The Texas Court of Criminal Appeals first created an abuse-of-the-writ doctrine in 1974.[63] But for the first twenty years of the doctrine's existence, Texas courts

---

[61] See Ex parte Blue, 230 S.W.3d at 160 n.42 ("[I]t is arguable that, in theory at least, . . . [§ 5(a)(3)] would also permit a subsequent state habeas applicant to proceed under circumstances that would not excuse a federal petitioner under Sawyer v. Whitley. We need express no ultimate opinion on this question here.").

[62] See, e.g., Emery v. Johnson, 139 F.3d 191, 195 (5th Cir. 1997), cert. denied, 525 U.S. 969 (1998).

[63] See Ex parte Carr, 511 S.W.2d 523 (Tex. Crim. App. 1974). See generally Charles M. Mallin, Death Penalty: Texas Law—Subsequent Writs and Abuse of the Writ Doctrine in Texas, 6 TEX. WESLEYAN L. REV. 151, 163-67 (2000) (tracing the origins and history of Texas's abuse-of-the-writ doctrine).

failed to apply it in a strict or regular manner.[64]  This failure rendered the doctrine an inadequate state-law ground, and "therefore, we . . . refused to honor it."[65]  That changed in 1994, when the Court of Criminal Appeals "announced the adoption of a strict abuse-of-the-writ doctrine, tempered only by an exception for cause."[66]  Post-Barber, Texas's abuse-of-the-write doctrine became "an adequate procedural bar for purposes of federal habeas review,"[67] and we honored it accordingly.

Just one year later the Texas legislature codified the CCA's abuse-of-the-writ doctrine in Article 11.07 § 4(a)—which applies to non-capital felonies —and Article 11.071 § 5(a), which applies to capital cases such as Rocha's.  Initially, we were uncertain whether § 5(a) supplanted or merely supplemented the CCA's abuse-of-the-writ doctrine.[68]  The CCA soon clarified that § 5(a) is a codification of the judicially created abuse-of-the-writ doctrine.[69]  Over the next several years

---

[64] See Emery, 139 F.3d at 195.

[65] Id. (citing Lowe v. Scott, 48 F.3d 873, 876 (5th Cir. 1995)).

[66] Id. (citing Ex parte Barber, 879 S.W.2d 889, 891 n.1 (Tex. Crim. App. 1994) (en banc)).

[67] Emery, 139 F.3d at 196; see also Fearance, 56 F.3d at 642 ("After Barber, dismissals of Texas habeas petitions as an abuse of the writ should create a procedural bar under the Coleman standard.").

[68] See, e.g., Nobles, 127 F.3d at 423 n.32 ("In view of the dearth of judicial interpretation of Article 11.071 § 5(a), however, we cannot definitively say, and therefore do not venture to guess, whether that section was intended to codify the preexisting abuse-of-writ doctrine.").

[69] See Barrientes v. Johnson, 221 F.3d 741, 759 n.10 (5th Cir. 2000) ("We treat article 11.071 as a codification of the Texas abuse-of-the-writ doctrine." (citing Ex parte Smith, 977 S.W.2d 610, 611 n.4 (Tex. Crim. App. 1998))), cert. denied, 513 U.S. 1134 (2001); see also Ex parte Kerr, 64 S.W.3d 414, 418 n.11 (Tex. Crim. App. 2002) ("[T]his Court had long ago recognized the jurisprudential problems attendant to multiple writ filings and hinted of judicial invocation of the 'abuse of the writ' doctrine . . . .  Articles 11.07 and 11.071 now statutorily require the consistent application of the "abuse of the writ" doctrine to subsequent writ filings."); Ex parte Davis, 947 S.W.2d 216, 226 (Tex. Crim. App. 1996) (en banc) (McCormick, P.J., concurring) ("The successive writ provisions of Article 11.071, Section 5(a), for the most

we developed an unbroken line of precedent holding that a successive state habeas application that had been dismissed as an abuse of the writ because it failed to satisfy § 5(a) had been dismissed on an independent and adequate state-law ground.[70]

Then, in 2002, the Supreme Court held in Atkins v. Virginia that the Eighth Amendment prohibits the execution of mentally retarded persons.[71] This new rule of constitutional law was made retroactive on habeas review.[72] Section 5(a)(1) permits the filing of "a subsequent application for a writ of habeas corpus" if the claim that the application presents could not have been presented in a previous application "because the . . . legal basis for the claim was unavailable on the date the applicant filed the previous application."[73] By its terms, then, § 5(a)(1) would have entitled any Texas death-row inmate who had filed an initial habeas application before June 20, 2002, to file a successive application.[74]

Confronted with the specter of state district courts being forced to consider

_____

part are merely a legislative codification of the judicially created 'abuse of the writ' doctrine.").

[70] See, e.g., Aguilar v. Dretke, 428 F.3d 526, 533 (5th Cir. 2005) ("This court has consistently held that Texas' abuse-of-writ rule is ordinarily an 'adequate and independent' procedural ground on which to base a procedural default ruling. (citing Matchett v. Dretke, 380 F.3d 844, 848 (5th Cir. 2004), Henderson v. Cockrell, 333 F.3d 592, 605 (5th Cir. 2003), and Horsley v. Johnson, 197 F.3d 134, 137 (5th Cir. 1999))), cert. denied, 547 U.S. 1136 (2006).

[71] 536 U.S. at 321.

[72] Bell v. Cockrell, 310 F.3d 330, 332 (5th Cir. 2002).

[73] TEX. CODE CRIM. PROC. art. 11.071 § 5(a)(1).

[74] See Ex parte Williams, No. 43,907-02, 2003 WL 1787634, at *3 (Tex. Crim. App. Feb. 26, 2003) (unpublished) (Price, J., dissenting) ("The applicant filed this subsequent application for writ of habeas corpus under Texas Code of Criminal Procedure Article 11.071. He alleges that he is mentally retarded, that the United States Constitution prohibits execution of the mentally retarded, and that the legal basis for this claim, Atkins v. Virginia, 536 U.S. 304, (2002), was not available when his initial application was filed. According to the plain meaning of Article 11.071, the applicant's case should be remanded for the convicting court to determine the merits of his claim.").

large numbers of successive habeas applications raising meritless Atkins claims,[75] the Court of Criminal Appeals made a choice. It opted to create a new requirement for habeas applicants who sought to bring a subsequent Atkins petition under§ 5(a)(1):

> A second or subsequent writ must contain 'sufficient specific facts' to support an applicant's Atkins claim. . . . The mere assertion of a valid legal claim, unsupported by sufficient specific factual allegations which, if true, would entitle the applicant to relief, is not enough to overcome a Section 5 bar. . . . [The applicant] must provide evidence of a prima facie case, sufficient evidence to withstand a directed verdict or a 'no evidence' summary judgment motion that he has a factual basis for his claim under newly-established law.[76]

With this preliminary screening, the Court responded to an anticipated flood of meritless Atkins claims.

This choice came with costs. The CCA's screening function entailed a

---

[75] See id. at *1 (Cochran, J., concurring) ("A second or subsequent . . . which makes the naked assertion, 'I am mentally retarded,' obviously does not suffice [under § 5(a)(1)]. If it did, every inmate on death row would be equally entitled to file a subsequent writ in the hope that something, somewhere might turn up to support this bare assertion."); see also Ex Parte Brooks, 219 S.W.3d 396, 400 (Tex. Crim. App. 2007) ("While Article 11.071, section 5(a)(1) does not state that the application must include facts establishing that the applicant has a prima facie Atkins claim, it would be absurd to consider applications in which the applicant does not show that the previously unavailable legal basis applies to his claim. To read the statute otherwise would mean that every time a new law is passed or precedent is set, every inmate could file a subsequent application for writ of habeas corpus, regardless of whether the newly available legal basis applied to his situation, and the court would have to consider the merits. This clearly undermines the purpose of the subsequent-writ provisions."); Ex Parte Staley, 160 S.W.3d 56, 64 (Tex. Crim. App. 2005) (per curiam) (explaining that "a death-row inmate may file a subsequent writ application based upon the newly available legal claim of mental retardation under Atkins v. Virginia, but if his application states that his I.Q. has repeatedly been tested at 120-130, he has failed to state sufficient specific facts establishing a cognizable claim under Atkins" and his application should be dismissed under § 5(a)(1) (footnote omitted)).

[76] See Ex parte Williams, 2003 WL 1787634, at *1 (Cochran, J., concurring) (footnote omitted).

22

prima facie review of the substantive merits of each applicant's Atkins claim.[77] This prima-facie review meant that CCA decisions dismissing Aktins claims for failure to satisfy § 5(a)(1) rested on the merits of those claims. Consequently, the federal courts were not procedurally barred from considering federal habeas petitions advancing Atkins claims that had been dismissed as abuses of the writ for failure to satisfy § 5(a)(1).[78] We first recognized that this new, Atkins-specific screening function had robbed § 5(a)(1) dismissals of their independent, state-law character in our 2005 decision in Morris v. Dretke.[79]

Change was afoot. Over the next several years we reached the merits of at least four Atkins claims notwithstanding the fact that the CCA had determined that they failed to satisfy § 5(a)(1) and dismissed them as abuses of the writ.[80]

---

[77] See, e.g., Ex parte Johnson, No. 36,139-04, 2003 WL 21715265, at *2 (Tex. Crim. App. June 6, 2003) (unpublished) (Johnson, J., concurring) (detailing what kind of evidence is necessary "[t]o fulfill the prima facie requirement for an Atkins claim" and concurring in the dismissal because of the "applicant's failure to produce 'sufficient specific facts' to support an Atkins claim").

[78] This new requirement that Atkins claims make a prima facie showing of merit was, as the CCA itself recognized, judicial gloss on § 5(a)(1) not mandated by the text of the statute. See Williams, 2003 WL 1787634, at *3-*6 (Price, J., dissenting) (criticizing the majority for departing from the text of the statute). But its judge-made character did not, and does not, make it any less binding on the federal courts. See supra note 21 and cases cited therein.

[79] See 413 F.3d 484, 500 n.4 (5th Cir. 2005) (Higginbotham, J., concurring) ("A dismissal under article 11.071(5)(a) normally constitutes an adequate and independent procedural bar to federal review. However, in the Atkins context, Texas courts have imported an antecedent showing of 'sufficient specific facts' to merit further review, rendering dismissal of such claims under article 11.071(5)(a) a decision on the merits." (internal citations omitted)).

[80] See Eldridge v. Quarterman, 325 F. App'x 322, 324 (5th Cir.), cert. denied sub nom. Eldridge v. Thaler, 130 S. Ct. 536 (2009); Williams v. Quarterman, 293 F. App'x 298, 301-02 (5th Cir. 2008) (per curiam); Rosales v. Quarterman, 291 F. App'x 558, 562 (5th Cir. 2008), cert. denied, 129 S. Ct. 1317 (2009); Rivera, 505 F.3d at 359-60; see also Moreno v. Dretke, 450 F.3d 158, 165 n.3 (5th Cir. 2006) (noting a division among the district courts of this circuit over whether a CCA dismissal on the grounds that a petitioner failed to allege sufficient facts to establish a prima facie Atkins claim was a procedural or merits-based dismissal, but declining to resolve the question), cert. denied, 549 U.S. 1120 (2007).

The first case in which we did so was Rivera v. Quarterman:[81]

> [T]o decide whether an Atkins claim is an abuse of the writ, the CCA examines the substance of the claim to see if it establishes a prima facie case of retardation . . . . Thus, a decision that an Atkins petition does not make a prima facie showing—and is, therefore, an abuse of the writ—is not an independent state law ground. . . . Although Texas' abuse of the writ doctrine is superficially procedural . . ., it steps beyond a procedural determination to examine the merits of an Atkins claim. For an Atkins claim, the merits determination is at a minimum "interwoven" with the constitutional prohibition against executing the mentally retarded.[82]

But even as we announced this holding we took care to limit its reach: "Of course, this court has held in other circumstances that Texas' abuse of the writ doctrine is an adequate and independent state law ground, but the merits showing now incorporated for Atkins claims changes the character of the doctrine."[83]

Rivera did not overrule our numerous previous holdings that successive state habeas applications that were dismissed because they could not satisfy § 5(a) were dismissed on an independent and adequate state-law ground.[84] The new prima-facie-showing requirement the CCA had engrafted onto § 5(a)(1) was specific to Atkins claims. It bears

---

[81] Although it does not say so explicitly, Rivera dealt specifically with dismissals under § 5(a)(1). See Ex parte Rivera, No. 27,065-02, 2003 WL 21752841, at *1 (Tex. Crim. App. July 25, 2003) (en banc) (per curiam) (unpublished) ("Our habeas corpus statute, Article 11.071, Section 5(a), states that: a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that ... the current claims and issues have not been and could not have been presented previously ... because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application." (quoting TEX. CODE CRIM. PROC. Art. 11.071 § 5(a)(1))).

[82] 505 F.3d at 359-60 (footnotes omitted).

[83] Id. at 359 n.37 (citations omitted).

[84] See supra note 70 and cases cited therein.

24

emphasizing that the state of Texas itself—well aware that it could gain the substantial benefits of AEDPA deference by treating dismissals under § 5(a)(1) as dismissals on the merits—took the tack that an Atkins claim dismissed under § 5(a)(1) was dismissed on the merits and therefore not procedurally barred.[85]  But even as we were reaching the merits of Atkins claims that had been dismissed under § 5(a)(1), we continued to treat other kinds of petitions that had been dismissed under § 5(a)(1) as having been dismissed on an independent and adequate state-law ground.[86]  The prima facie showing requirement was, at the time, strictly confined to the Atkins context.

That began to change in April 2005 when the CCA decided Ex parte Staley.[87]  Staley involved a successive habeas application that raised a Penry II claim.[88]  The CCA declined to decide whether the Penry II claim

---

[85] See, e.g., Response in Opposition to Request for Certificate of Appealability at 12, Eldridge v. Quarterman, 325 F. App'x 322 (5th Cir. 2009) (No. 08-70012) ("The Court of Criminal Appeals denied Eldridge's subsequent state petition finding that he failed to establish 'a prima facie claim' . . . .  Accordingly, the Texas court's dismissal of Eldridge's successive application was an adjudication on the merits entitled to deference by this Court."); Brief of Respondent-Appellant at 33-35, Moore v. Quarterman, 491 F.3d 213, 219 (5th Cir. 2007), rev'd en banc, 533 F.3d 338 (5th Cir. 2008) (No. 05-70038) ("[A] review of the state court's treatment of subsequent Atkins claims indicates a significant reliance on the underlying merits of the claim. The cases reveal that the state court is actively reviewing the quantity and the quality of the evidence presented and considering whether the evidence is sufficient to support a claim of mental retardation. . . .  Therefore, in the instant case, the lower court was not empowered to apply a de novo standard.").

[86] See, e.g., Moore v. Quarterman, 534 F.3d 454, 463 (5th Cir. 2008) ("Here, the CCA explicitly dismissed Moore's successive application (where he first raised Brady) as an abuse of the writ, and 'Texas's abuse of the writ doctrine is a valid state procedural bar foreclosing federal habeas review.'" (quoting Coleman v. Quarterman, 456 F.3d 537, 542 (5th Cir. 2006), cert. denied, 549 U.S. 1343 (2007)).

[87] 160 S.W.3d 56 (Tex. Crim. App. 2005) (per curiam).

[88] Id. at 62.  See generally Penry v. Johnson, 532 U.S. 782 (2001) (holding that Texas's nullification jury instruction at the sentencing phase of capital-punishment cases violated the

25

was legally unavailable at the time the applicant filed his first application, holding instead that the successive application did not "'contain sufficient specific facts establishing that' his claim is cognizable."[89]  The CCA explained that "it is not sufficient to allege that a legal claim was unavailable at the time of the applicant's original filing if the facts alleged in the subsequent application do not bring the constitutional claim under the umbrella of that 'new' legal claim."[90]

Two years later, § 5(a)(1)'s transformation was complete.  In Ex parte Campbell,[91] the CCA extended the prima-facie-showing requirement it had developed under Atkins to all successive habeas claims brought under § 5(a)(1). Campbell argued that he was entitled to habeas relief under Brady v. Maryland and Barefoot v. Estelle.[92]  The CCA concluded that the factual basis for his claims was unavailable at the time he filed his original application[93] but nonetheless dismissed his successive application, holding:

> To satisfy section 5(a)(1), . . . 1) the factual or legal basis for an applicant's current claims must have been unavailable as to all of his previous applications; and 2) the specific facts alleged, if established, would constitute a constitutional violation that would likely require relief from either the

---

Eighth Amendment by failing to give juries adequate opportunity to give effect to mitigating circumstances).

[89] Ex parte Staley, 160 S.W.3d at 63 (quoting TEX. CODE CRIM. PROC. Art. 11.071 § 5(a)).

[90] Id.

[91] 226 S.W.3d 418 (Tex. Crim. App. 2007).

[92] Id. at 422 (citing Brady v. Maryland, 373 U.S. 83 (1963), and Barefoot v. Estelle, 463 U.S. 880 (1983)).

[93] Id. at 421-22.

conviction or sentence.[94]

Post-Campbell, a two-step inquiry—unavailability, then merits—is required before any successive habeas application can be permitted to proceed under § 5(a)(1).[95]

One feature of the CCA's decision in Campbell warrants particular attention. Campbell establishes that the two requirements of § 5(a)(1) should be applied sequentially.[96] The CCA first examines whether the factual or legal basis of the claim was unavailable at the time of the original application. Only if the applicant can surmount the unavailability hurdle does the CCA proceed to ask whether the application makes out a claim that is prima facie meritorious. Understanding this second point is critical to our own jurisprudence. If an applicant fails to satisfy the unavailability requirement, the § 5(a)(1) inquiry is over, and no merits determination takes place.[97]

It did not take us long to register the significance of the change announced

---

[94] Id. at 421 (footnote omitted).

[95] See, e.g., Ex parte Alba, 256 S.W.3d 682, 691 n.28 (Tex. Crim. App. 2008) (applying the two-part unavailability–merits test under § 5(a)(1) to an Eighth Amendment challenge to Texas's lethal-injection protocol); see also Williams, 602 F.3d at 306 (noting that the CCA "has grafted an additional requirement on the first prong of 11.071 § 5(a)").

[96] See Ex parte Campbell, 226 S.W.3d at 422 ("Applicant also must jump over the rest of the section 5(a)(1) bar. That is, his application must allege sufficient specific facts that, if proven, establish a federal constitutional violation sufficiently serious as to likely require relief from his conviction or sentence." (emphasis added))

[97] See, e.g., Ex parte Hood, 211 S.W.3d 767, 770 (Tex. Crim. App.) (concluding that § 5(a)(1) did not authorize the CCA to consider the merits of a claim presented in a successive habeas application "because the legal bases upon which applicant relies were available at the time he filed his second application" and undertaking no discussion of the prima facie merits of the applicant's claim), cert. denied, 552 U.S. 829 (2007), reconsideration granted on other grounds, No. WR-41,168-11, 2008 WL 4946276 (Tex. Crim. App. Nov. 19, 2008) (per curiam).

in Campbell.  A few months later, in Ruiz v. Quarterman,[98] we took note, in passing, of the change in the law that Campbell had wrought:

> The Texas Code of Criminal Procedure, as interpreted by the CCA, provides for subsequent applications where (1) the factual or legal basis for the subsequent claim was previously unavailable and (2) where the facts alleged would constitute a federal constitutional violation that would likely require relief from either the conviction or sentence.  The boilerplate dismissal by the CCA of an application for abuse of the writ is itself uncertain on this point, being unclear whether the CCA decision was based on the first element, a state-law question, or on the second element, a question of federal constitutional law.[99]

In his petition for rehearing, Rocha misreads this passage from Ruiz in three ways.  First, he reads it to be binding precedent that controls  our interpretation of all three subsections of § 5(a), including § 5(a)(3).  That reading is more than Ruiz will bear.  As its citation to Campbell made clear,[100] Ruiz spoke only of dismissals under § 5(a)(1).  Subsections 5(a)(1) and 5(a)(3) carry different meanings—different enough that in Ex parte Blue, the CCA's seminal decision interpreting § 5(a)(3), the CCA did not even cite to, much less discuss, its prior decision in Campbell.[101]

Second, Rocha ignores the fact that our decision in Ruiz  was a product of the unique procedural posture in which the case arrived at our court.  Ruiz emerged from a fractured CCA that produced three separate opinions,[102] two of

---

[98] 504 F.3d 523 (5th Cir. 2007).

[99] Id. at 527 (footnote omitted).

[100] See id. at 527 n.11.

[101] See Ex parte Blue, 230 S.W.3d at 159-63.

[102] See Ex parte Ruiz, No. WR-27,328-03, 2007 WL 2011023, at *1 (Tex. Crim. App. July 6, 2007) (per curiam) (unpublished).

28

which discussed the merits of Ruiz's state habeas application.[103]  Only four judges joined in the plurality opinion's dismissal of Ruiz's application as an abuse of the writ.  The necessary fifth vote for the CCA's decision[104] came from Judge Womack, whose concurring opinion concluded that Ruiz had failed to allege a meritorious claim of ineffective assistance of counsel at sentencing.[105]  As such, Judge Womack's concurrence was inarguably merits-based.  We thus concluded that the CCA's decision as a whole rested not on § 5(a)(1) but on its rejection of Ruiz's Wiggins claim on the merits: "Judge Womack's opinion, necessary to the court's judgment, pushes the court toward a clear merit ruling, and in any event deprives the plurality of a fifth vote on an independent and adequate state ground."[106]  We reached the merits of Ruiz's claim because Judge Womack—and hence the CCA's decision—reached the merits, not because of any conclusion we drew about the state- or federal-law character of a dismissal under

---

[103] See Ex parte Ruiz, No. WR-27,328-03 (Tex. Crim. App. July 6, 2007) (per curiam) (unpublished) (Womack, J., statement respecting dismissal) ("Ruiz . . . alleges that he was denied effective assistance of counsel when his trial attorneys failed to present certain evidence at the punishment hearing . . . .  The evidence in question was of two kinds: certain facts about the applicant's experiences during childhood and the opinion of a psychologist. Trial counsel hired the psychologist, considered his report, and chose not to call him at trial because his findings about the applicant would do more harm than good. This was not an unreasonable decision."), available at http://www.cca.courts.state.tx.us/opinions/ HTMLOpinionInfo.asp?OpinionID=15705; id. (Holcomb, J., dissenting) ("[T]he applicant in this case has suffered a violation of his Sixth Amendment right to counsel . . . ."), available at http://www.cca.courts.state.tx.us/opinions/HTMLOpinionInfo.asp?OpinionID=15706.

[104] When the CCA is convened en banc, "'the concurrence of five Judges shall be necessary for a decision.'" Ruiz, 504 F.3d at 527 n.12 (quoting TEX. CONST. art. 5, § 4(b)).

[105] See supra note 103.  Under binding CCA precedent, "the rule for determining a majority holding in a case decided by a fragmented court" in which "'no single rationale explaining the result enjoys the assents of five Justices'" is that "'the holding of the Court may be viewed as the position taken by those Members who concurred in the judgment on the narrowest grounds.'"  Haynes v. State, 273 S.W.3d 183, 188-89 (Tex. Crim. App. 2008) (emphasis omitted) (quoting Marks v. United States, 430 U.S. 188, 193 (1977)).

[106] Ruiz, 504 F.3d at 528.

29

§ 5(a)(1).

Third, Rocha argues that Ruiz obliges us to conclude that § 5(a)(1) is dependent on federal law in all cases. Not so. It is true that prior to Campbell, our decisions had assumed that a dismissal under § 5(a)(1) always rested on an independent and adequate state-law ground. That assumption cannot survive Campbell. At the same time, it is not the case that a post-Campbell dismissal under § 5(a)(1) never rests on an independent and adequate state-law ground. Whether a § 5(a)(1) dismissal is independent of federal law turns on case-specific factors. If the CCA's decision rests on availability, the procedural bar is intact. If the CCA determines that the claim was unavailable but that the application does not make a prima facie showing of merit, a federal court can review that determination under the deferential standards of AEDPA.

We correctly interpreted the CCA's application of its "unavailability, then merits" approach to § 5(a)(1) in Hughes v. Quarterman.[107] There, the CCA had issued a boilerplate abuse-of-the-writ order dismissing a successive application that raised a Penry II claim.[108] We held that the claim was procedurally barred, reasoning that "[n]o application or interpretation of federal law is required to determine whether a claim has, or could have, been presented in a previous habeas application."[109] There was "nothing in [the CCA's] perfunctory dismissal of the claims that suggest[ed] that it actually considered or ruled on the merits."[110] Especially in light of the CCA's holding that the legal basis for a

---

[107] 530 F.3d 336 (5th Cir. 2008), cert. denied, 129 S. Ct. 2378 (2009).

[108] Id. at 340.

[109] Id. at 342.

[110] Id.

30

Penry claim had been available since 1989,[111] everything about the CCA's perfunctory dismissal of Hughes's claim under § 5(a)(1) suggested that the dismissal rested an independent state-law ground—specifically, on the fact that the factual and legal bases for the claim were available when Hughes filed his first state habeas application. Under Campbell, if a successive habeas application cannot satisfy the requirement of unavailability, the court need not inquire any further.

Hughes illustrates the proper application of Coleman v. Thompson[112] to a CCA determination that a successive habeas application does not satisfy § 5(a)(1). Under Coleman, we are required to presume that a state-court habeas decision does not rest on an independent state-law ground only if we first determine that the state-court decision we are reviewing "'fairly appears to rest primarily on federal law, or to be interwoven with the federal law.'"[113] We

---

[111] See Ex parte Hood, 211 S.W.3d at 778 ("Penry I stood as a Supreme Court decision from which an applicant could 'reasonably formulate' the contention that he was entitled to jury consideration of any type of mitigating evidence." (citing Penry v. Lynaugh, 492 U.S. 302 (1989), rev'd in part on other grounds by Atkins v. Virginia, 536 U.S. 304 (2002))); id. at 779 ("Penry I afforded a legal basis for contending that the defendant's mitigating evidence was constitutionally relevant to determining whether he should receive the death penalty.").

[112] 501 U.S. 722, 735 (1991) ("In habeas, if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition."); see also Michigan v. Long, 463 U.S. 1032 (1983) (holding that a state-court decision that fairly appears to rest on or be interwoven with federal law will be presumed to be based on federal law unless the state high court whose judgment the Supreme Court is reviewing makes a clear and express statement to the contrary); Harris v. Reed, 489 U.S. 255 (1989) (extending the Long presumption to the federal-habeas context).

[113] Coleman, 501 U.S. at 735 (quoting Long, 463 U.S. at 1040-41); see also Young v. Herring, 938 F.2d 543, 553 (5th Cir. 1991) (en banc) ("'A predicate to the application of the Harris presumption . . . is that the decision of the last state court to which the petitioner presented his federal claims must fairly appear to rest primarily on federal law or to be interwoven with federal law.'" (quoting Coleman, 501 U.S. at 735)), cert. denied, 503 U.S. 940 (1992).

31

observed in Ruiz that "[t]he boilerplate dismissal by the CCA of an application for abuse of the writ [under § 5(a)(1)] is . . . unclear whether the CCA decision was based on [unavailability], a state-law question, or on [prima facie lack of merit], a question of federal constitutional law."[114]  It does not follow from that observation that every dismissal under § 5(a)(1) fairly appears to rest on or be interwoven with federal law.  A CCA decision fairly appears to rest on state law if it dismisses a subsequent habeas application under § 5(a)(1) because the application does not raise a claim that was factually or legally unavailable.[115]

Coleman does not require us to check our common sense at the door when we read an opinion of the CCA with an eye toward ascertaining its decisional basis.  The Supreme Court's overarching aim in Coleman was to reduce the number of habeas cases in which the lower federal courts applied the Harris presumption.[116]  Adopting the rule that all post-Campbell § 5(a)(1) dismissals are based on federal law "would greatly and unacceptably expand the risk that federal courts will review the federal claims of prisoners in custody pursuant to

---

[114] Ruiz, 504 F.3d at 527.

[115] See, e.g., Maldonado v. Thaler, No. 10-70003, 2010 WL 3155236, at *6-*7 (5th Cir. Aug. 10, 2010) (per curiam) (unpublished) ("Maldonado has never, in this court or before the district court, contended that the factual or legal bases for these Fifth and Sixth Amendment claims were unavailable when he filed his initial habeas petition, and there is no basis in the record to conclude that they were. . . .  Accordingly, we conclude that the dismissal of Maldonado's subsequent habeas application was premised on an adequate and independent state procedural ground.").

[116] See, e.g., Coleman, 501 U.S. at 740 ("There is . . . little that the federal courts will gain by applying a presumption of federal review in those cases where the relevant state court decision does not fairly appear to rest primarily on federal law or to be interwoven with such law, and much that the States and state courts will lose. We decline to so expand the Harris presumption."); id. at 736 ("Coleman urges a broader rule: that the presumption applies in all cases in which a habeas petitioner presented his federal claims to the state court. This rule makes little sense."); id. at 739-40 ("In the absence of a clear indication that a state court rested its decision on federal law, a federal court's task will not be difficult.").

judgments resting on independent and adequate state grounds."[117] We should be especially mindful of that concern as we interpret § 5(a), a state statute whose express purpose is to reduce the number of successive habeas applications that receive full merits review.[118] When the CCA dismisses a successive habeas application on the ground that it does not satisfy § 5(a)(1), we can—and should—read its order of dismissal to determine which of the two elements of § 5(a)(1) was the basis of the court's dismissal. A boilerplate dismissal might be ambiguous on this point, but finding clarity in ambiguity is the bread-and-butter work of a federal court of appeals.

The opinion on rehearing in Balentine v. Thaler (hereinafter, "Balentine II")[119] lies comfortably with our analysis. Balentine's successive habeas application raised a Wiggins claim of ineffective assistance of counsel at sentencing. [120] The Court of Criminal of Appeals issued a perfunctory three-paragraph order dismissing his successive application on the ground that it "failed to satisfy the requirements of Article 11.071 § 5."[121] The CCA did not specify which of § 5(a)'s three subsections it was addressing. Balentine had not argued that he did not commit the crime for which he had been convicted, so

---

[117] See id. at 739.

[118] See Ex parte Brooks, 219 S.W.3d at 399 ("The purpose of the Habeas Corpus Reform Act of 1995 was to . . . limit[] the availability of subsequent applications . . . .").

[119] See Balentine v. Thaler, No. 09-70026 (5th Cir. Nov. 17, 2010) ("Balentine II"). Balentine II withdraws Balentine I, see Balentine v. Thaler, 609 F.3d 729 (5th Cir. 2010), thereby mooting Rocha's objection that our panel opinion conflicts with Balentine I.

[120] See id. slip op. 19. Balentine's successive state habeas application also raised a Batson claim, but Balentine did not continue to pursue that claim in federal court. Id.

[121] Ex parte Balentine, No. WR-54,071-01, 2009 WL 3042425, at *1 (Tex. Crim. App. Sept. 22, 2009) (per curiam) (unpublished).

§ 5(a)(2) did not apply.[122]  The CCA must have dismissed his successive application because it did not satisfy the requirements of either § 5(a)(1) or § 5(a)(3).  Balentine II determined that this dismissal did not constitute a merits determination.

As to § 5(a)(1), Balentine II acknowledged that the two-part unavailability–merits inquiry announced in Campbell introduces some uncertainty into dismissals under § 5(a)(1), but it rejected the position that this "uncertainty should be transformed into a presumption that the state court reached the merits."[123]  As Judge Southwick observed, such a presumption would run afoul of the Supreme Court's holding in Coleman that we may not presume that there is no independent and adequate state-law grounds for a state court's decision unless we first determine that "'it fairly appears that the state court addressed'" the merits of the prisoner's federal constitutional claims for habeas relief.[124]  Campbell teaches that, absent an express indication otherwise, the CCA assesses the merits of a successive state habeas application only if it first concludes that the factual or legal basis for the claim was unavailable.  There was no question that the legal basis for Balentine's claims was available when he filed his first state habeas application in 2001,[125] and nothing suggested that Balentine could not have discovered the factual basis for his Wiggins claim through the exercise of reasonable diligence before he filed his first

---

[122] Balentine II, No. 09-70026, slip op. 20.

[123] Id. slip op. 18.

[124] Id.

[125] The Supreme Court first "established the legal principles that govern claims of ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984)."  Wiggins, 539 U.S. at 521.

application.[126] As a result, Balentine II concluded that the CCA had not reached the merits of Balentine's Wiggins claim in determining that his successive state habeas application did not satisfy the requirements of § 5(a)(1).[127]

As to § 5(a)(3), Balentine II noted that Balentine did not argue in his successive state habeas application that he could satisfy § 5(a)(3) and that, in any event, Balentine's Wiggins claim was not a claim of ineligibility for the death penalty.[128]  In this latter regard, Balentine II's conclusion and analysis are identical to our own.

In sum, Rivera holds that the CCA reaches the merits of an Atkins claim when it determines that the Atkins claim is prima facie without merit and dismisses the claim for failure to satisfy § 5(a)(1).  Ruiz holds that we can reach the merits of a successive habeas claim that the CCA does not dismiss as an abuse of the writ under §5(c) but rather denies on the merits. Hughes holds that a dismissal for failure to satisfy the "factual or legal unavailability" requirement of § 5(a)(1) rests on state-law grounds.  And Balentine II holds first that we should not treat every dismissal under § 5(a)(1) as a dismissal on the merits and second that a Wiggins claim is not a claim of actual innocence of the death penalty.

B.

---

[126] See generally TEX. CODE CRIM. PROC. art. 11.071 § 5(e) ("For purposes of Subsection (a)(1), a factual basis of a claim is unavailable on or before a date described by Subsection (a)(1) if the factual basis was not ascertainable through the exercise of reasonable diligence on or before that date.").

[127] See Balentine II, No. 09-70026, slip op. 21 ("Balentine's subsequent application made no effort to show that the facts or law underlying his Wiggins claim were unavailable to him at the time of his first state application. . . .  Therefore, Section 5(a)(1) was not satisfied.").

[128] See id. slip op. 21-23.

There is no dissonance between any of those cases and our holding that we cannot reach the merits of Rocha's Wiggins claim, which the CCA determined did not satisfy § 5(a)(3) and dismissed as an abuse of the writ. The CCA's conclusion that Rocha's successive habeas application did not satisfy § 5(a)(3) encompassed two separate determinations: (1) because Rocha did not raise his Wiggins claim in his initial state habeas application, the claim was procedurally defaulted; and (2) because Rocha could not establish that he is actually innocent of the death penalty, his procedural default should not be excused. The first of those determinations is based on a § 5(c), state procedural rule that is independent of federal law. Indeed, the rule that a prisoner waives any claim he does not present in his first state habeas application is the quintessential example of a state-law procedural rule that, when strictly and regularly applied, bars the federal courts from reaching the merits of a habeas claim.

The second of those determinations is based on the federal actual-innocence-of-the-death-penalty standard announced in Sawyer. But the fact that § 5(a)(3) incorporates a federal standard for determining when a procedural default should be excused did not empower the district court—and does not empower this Court—to review the merits of the federal constitutional claim that has been procedurally defaulted. A claim that a prisoner is actually innocent of the death penalty is legally distinct from a claim that a prisoner's trial counsel was constitutionally ineffective at sentencing. When the CCA rejects the former, it does not simultaneously decide the merits of the latter. As a result, the CCA's determination that Rocha is not actually innocent of the death penalty did not open up Rocha's Wiggins claim for merits review under AEDPA.

Rivera and Ruiz do not compel a contrary conclusion. When the CCA dismisses a successive habeas application because it cannot satisfy the "merits"

36

prong of § 5(a)(1),[129] it has conditioned the applicability of § 5(c)'s procedural bar on an antecedent determination that the federal constitutional claim on which the applicant seeks relief is without merit. Under Ake,[130] such a dismissal fairly appears to rest on or be interwoven with the merits of the federal constitutional claim and thus triggers a presumption under Harris that the dismissal was not based on an independent and adequate state-law ground.[131] By contrast, the CCA's order dismissing Rocha's habeas application does not satisfy the "fairly appears" requirement that is a predicate to the application of the Harris presumption.[132] The CCA's dismissal of Rocha's habeas application does not fairly appear to rest on or be interwoven with resolution of the merits of Rocha's Wiggins claim. Rather, the CCA's dismissal fairly appears to—and in fact does—rest on its twin determinations that Rocha had previously filed other state habeas applications and that Rocha cannot establish that he is actually innocent of the death penalty under § 5(a)(3).

By enacting § 5(a)(3), the Texas Legislature ceded nothing to the federal courts that they did not already possess. Sawyer is a federally mandated escape valve from the doctrine of procedural bar. Sawyer obligates the federal courts to decide the merits of any claim presented in the first federal habeas petition[133]

---

[129] See supra notes 94-97 and accompanying text.

[130] See supra notes 54-58 and accompanying text.

[131] See Coleman, 501 U.S. at 734-35 (citing Harris, 489 U.S. at 266).

[132] See id. at 736 ("Harris . . . [applies] only in those cases in which 'it fairly appears that the state court rested its decision primarily on federal law.' (quoting Harris, 489 U.S. at 261)).

[133] Contra 28 U.S.C. § 2244(b)(2) (barring consideration of a successive federal habeas petition unless the petitioner can show either legal unavailability or newly discovered evidence plus actual innocence of the underlying offense); In re Webster, 605 F.3d 256, 258-59 (5th Cir. 2010) (concluding in a § 2255(h) case that the use of the phrase "guilt of the offense" in 28 U.S.C. § 2255(h)(1) and § 2244(b)(1)(B)(ii) bars a federal habeas petitioner from bringing a

filed by a state prisoner who can make a clear and convincing showing of actual innocence of the death penalty, irrespective of whether a state court has previously decided the claim on its merits. There is no law the Texas Legislature could have passed that would have insulated successive habeas applications from the rule announced in Sawyer. Section § 5(a)(3) merely gives Texas's courts the first crack at applying the Sawyer escape valve. To conclude that the Texas Legislature somehow expanded the scope of the Sawyer escape valve merely by importing it into state law would be to turn the legislative effort on its head.

The district court denied Rocha's Rule 60(b) motion on the ground that his Wiggins claim remains procedurally defaulted. We granted a certificate of appealability because jurists of reason could have debated the correctness of the district court's decision in light of the uncertainty in this area of our jurisprudence.[134] A careful review of our precedent reveals that Judge Harmon did not err by concluding that Rocha procedurally defaulted his Wiggins claim. A fortiori, her decision to deny Rocha's Rule 60(b) motion was not an abuse of discretion.

In the end, Rocha finds himself in the same position he was in when he first filed this federal habeas petition in 2003. At that time, his Wiggins claim was unexhausted and thus procedurally defaulted; he could have overcome that procedural default by showing that he is actually innocent of the death penalty. Rocha did not cure his procedural default by obtaining a ruling from the CCA that his successive state habeas application was subject to dismissal as an abuse

_____

successive petition based only on a claim of actual innocence of the death penalty), cert. filed, No. 10-150 (July 27, 2010).

[134] See Slack v. McDaniel, 529 U.S. 473, 484 (2000) ("When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows . . . that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.").

38

of the writ under § 5(c) because it did not satisfy § 5(a)(3). That § 5(a)(3) employs a federal standard to determine when a procedural default should be excused does not change the fact that the CCA dismissed Rocha's Wiggins claim on an independent and adequate state-law ground. Consequently, our role is limited to performing the same threshold review under Sawyer that the CCA performed under § 5(a)(3): for actual innocence of the death penalty. Rocha's petition for rehearing does not argue that we erred by concluding that he cannot establish that he is actually innocent of the death penalty. Therefore, his petition for rehearing is denied.

HAYNES, Circuit Judge, specially concurring:

I concur in the actual denial of panel rehearing, while noting that the petition for rehearing en banc remains pending. I respectfully do not join in the lengthy opinion accompanying the order denying panel rehearing because, I submit, it is largely unnecessary. The concern that

animated my original dissent to the portion at issue came to pass: Balentine I has now been transmuted into Balentine II with a different result and rationale that, somewhat ironically, encompasses some of the original reasoning of the original opinion in this case. Rather than adding to this volley of opinions, I conclude that we are required to follow the decision of Balentine II, specifically, the last few pages addressing § 5(a)(3), the only subsection at issue in our case, given the CCA's wording.

Under Balentine II's reading of prior precedent (including our original opinion in Rocha), the CCA's perfunctory dismissal of an application raising only mitigation issues is to be read as a conclusion that Rocha's state writ application did not raise issues "sufficiently fundamental as to excuse the failure to raise it timely in prior state and federal proceedings." Balentine II, slip op. at 21-22 (internal citations and quotation marks omitted). Unfortunately, this leads to the anomalous result that denial of a writ expressly referencing a statute that actually mentions the federal constitution – "by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071,[1] 37.0711, or 37.072"[2] – is nonetheless not sufficiently intertwined with the United States

---

[1] This section is the operative one for Rocha and provides for certain aggravating circumstances to be presented to the jury in a sentencing hearing following a guilty verdict in a capital case where the death penalty is sought. After the jury in Rocha's case unanimously answered "yes" to the aggravating circumstances questions, the following question, known as the "mitigating circumstances" question was asked: "Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed." TEX. CODE CRIM. PROC. ANN. art. 37.071, § 2(e) (West 1998). The current version of the mitigating circumstances question is identical except in that it now provides for life imprisonment "without parole." See TEX. CODE CRIM. PROC. ANN. art. 37.071, § 2(e)(1) (West 2010).

[2] TEX. CODE CRIM. PROC. ANN. art. 11.071, §5(a)(3)(West 2010)(emphasis added).

Constitution to allow our review. "One of the special issues" in question is the mitigation one. It is this one to which Rocha's Wiggins claim is focused. Because the Texas statute itself intertwines all special issues – mitigating and aggravating – with the federal constitutional violation without distinction, I do not see a basis for treating the mitigating issues differently than any other arising under this statute for the purpose of deciding which ones involve federal constitutional issues and which do not.[3] But that is where we are. Perhaps our court will reconsider this subject en banc. Perhaps the Texas Court of Criminal Appeals will elaborate on the tantalizing Blue footnote 42.[4] Given where we are now, however, I am bound to join in the determination to deny panel rehearing.

---

[3] The statute itself intertwines the question of a federal constitutional violation with the answer to special issues, including the mitigation issue. This circumstance is thus different from Sawyer, a case which, of course, predates Wiggins. Wiggins, though not a subsequent habeas case, was, of course, a habeas case about an attorney's failure to investigate and present mitigating evidence in a death penalty case.

[4] Balentine II necessarily concludes that the CCA has closed the door that footnote 42 left open. Blue declined to address the issue because it was an Atkins case that did not raise a mitigation issue. See 230 S.W.3d at 159, 160 n.42. Presented squarely with a § 5(a)(3) mitigation claim here and in Balentine II, the CCA dismissed the applications. In order to declare § 5(a)(3) inapplicable, the CCA must either have concluded (1) that the statute prohibited consideration of the mitigation question or (2) that the statute required assessment of the merits of the petitioners' mitigation claims and found them lacking; § 5(a)(3) is not discretionary in nature. I acknowledge that Balentine II views the former possibility as more likely and binds us here, but I note that in doing so we have implicitly held that the CCA has, without comment, rejected the grounds for review suggested by footnote 42.